IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE | CASE NO. 15-06907 (ESL) |
| BERNANDO RIVERA PADILLA and NANETTE MARIE COFAN PEREZ | CHAPTER 13 |
| Debtor | |
| BERNANDO RIVERA PADILLA | ADVERSARY NO. 21-00110 |
| Plaintiff | |
| vs. | |
| PUERTO RICO TREASURY DEPARTMENT, through its Secretary, FRANCISCO PARES ALICEA, and Secretary of Justice, DOMINGO EMANUELLI HERNANDEZ; and COMMONWEALTH OF PUERTO RICO, through its Secretary of Justice, DOMINGO EMANUELLI HERNANDEZ | |
| Defendant | |

OPINION AND ORDER

This adversary proceeding is before the court upon the *Complaint* (Docket No. 1) alleging a willful violation of the discharge injunction by the Puerto Rico Treasury Department (the "Treasury") and cross motions for summary judgement. Also pending before this Court are the following related pleadings: the *Answer to Complaint* (Docket No. 11), *Debtor-Plaintiff's Statement of Uncontested Facts* (Docket No. 15), the *Debtor-Plaintiff's MSJ* (Docket No. 16), the *Treasury's Statement of Uncontested Facts* (Docket No. 23), *Treasury's MSJ* (Docket No. 24), the *Treasury's Opposition to Debtor-Plaintiff's Statement of Uncontested Facts* (Docket No. 26), the *Treasury's Opposition to Debtor-Plaintiff's MSJ* (Docket No. 27), and the *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts* (Docket No. 33).

For the reasons discussed below, summary judgment in favor of the Debtor-Plaintiff is GRANTED, and consequently, summary judgment in favor of the Treasury dismissing the instant adversary proceeding is DENIED.

-1-

## JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §§ 157(a) and (b). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

## PROCEDURAL BACKGROUND

I.      The Bankruptcy Case, Bankr. Case No. 15-06907

1.      On September 9, 2015, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code, Schedules, Statement of Current Monthly and Disposable Income Calculation, and Statement of Financial Affairs. See Bankr. Case No. 15-06907, Docket No. 1.

2.      The Treasury was disclosed in Debtors' Schedule F as holding an unsecured nonpriority claim of $14,736.62 on account of "2010 taxes", and an unsecured nonpriority claim of $1,036.69 on account of "special taxes". See *Schedule F*, Bankr. Case No. 15-06907, Docket No. 1, p. 24.

3.      The Treasury was included in Debtors' Creditor Matrix. See *Creditor Matrix*, Bankr. Case No. 15-06907, Docket No. 1, p. 48.

4.      Notice of Debtors' bankruptcy filing was issued to the Treasury to the following address: PR Treasury Department, Bankruptcy Section (Suite 1504), 235 Ave. Arterial Hostos, San Juan, PR 00918-1415. See *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines*, Bankr. Case No. 15-06907, Docket No. 6; *Certificate of Notice*, Bankr. Case No. 15-06907, Docket No. 7.

5.      The Section 341 meeting of creditors was held on October 13, 2015, continued for and closed on October 27, 2015. See Bankr. Case No. 15-06907, Docket Nos. 6, 10, 11.

6.      On October 28, 2015, the Chapter 7 Trustee filed a *Report of No Distribution* (Bankr. Case No. 15-06907, Docket No. 13).

7.      On December 21, 2015, the Court issued an *Order of Discharge* (Bankr. Case No. 15-06907, Docket No. 21) under 11 U.S.C. § 727.

8. Notice of the *Order of Discharge* was issued to the Treasury to the following address: PR Treasury Department, Bankruptcy Section (Suite 1504), 235 Ave. Arterial Hostos, San Juan, PR 00918-1415. See *Certificate of Notice*, Bankr. Case No. 15-06907, Docket No. 22.

9. On September 23, 2016, the Court issued an *Order Discharging Trustee and Closing the Case* (Bankr. Case No. 15-06907, Docket No. 23).

10. On October 4, 2021, the Debtors filed a *Motion for Reopening o Case Under 11 U.S.C. § 305(b) (Discharge Related Matter)* (Bankr. Case No. 15-06907, Docket No. 25).

II. The Adversary Proceeding, Adv. Proc. No. 21-00110

11. On November 10, 2021, the Debtor-Plaintiff Bernando Rivera Padilla (the "Debtor-Plaintiff") filed the *Complaint* (Docket No. 1) against the Treasury, through its Secretary, Francisco Parés Alicea, and the Secretary of Justice, Domingo Emanuelli Hernández, and the Commonwealth of Puerto Rico, through the Secretary of Justice, Domingo Emanuelli Hernández, asserting one (1) cause of action: that the Treasury issued a collection notice on July 2, 2021 (the "Collection Notice", Docket No. 1, pp. 14-15, and Docket No. 38-2) demanding immediate payment of a discharged debt, behavior which "has caused Debtor unwarranted and unnecessary loses of time, efforts, and expenses in seeking to enforce the 'fresh start' ", "been intentional[,] egregious", "blatant[] and willful[]", in violation of Sections 524(a)(2) and 727 of the Bankruptcy Code, 11 U.S.C. §§ 524(a)(2), 727. Id., p. 7, ¶ 18, p. 10, ¶¶39. As a result of the forgoing allegations, the Debtor-Plaintiff seeks an order directing the Treasury to cease and desist any and all collection efforts, finding the Treasury in civil contempt for of the discharge order, and enjoining it from "continuing its policies and practices", a declaratory judgment finding that the Treasury's policies and practices "are unlawful and in willful violation of 11 USC § 524", an award of "no less than $30,000.00" on account of actual and emotional damages, plus reasonable attorneys' fees, litigation expenses, and costs. Id., pp. 12-13, ¶¶1-8.

12. On January 27, 2022, the Treasury filed an *Answer to Complaint* (Docket No. 11), asserting various affirmative defenses.

13. On March 11, 2022, the Debtor and the Treasury filed a *Joint Pretrial Report* (Docket No. 12).

14. On March 18, 2022, a pretrial hearing was held. <u>See</u> *Order and Notice [of] Preliminary Pretrial and Scheduling Conference*, Docket No. 4. Among other things:

> … The Court expressed concerns as to actual damages resulting from July 2, 2021 notice. A collection notice of a discharge debt may be a procedural violation to section 524(a), but does not necessarily mean there was a concrete and particularized harm. There is a difference between a statutory cause of action and a plaintiff's suffering a concrete harm because a defendant violated a Federal statute, that is, article III standing. <u>See</u>: <u>TransUnion LLC v. Ramirez</u>, 141. S. Ct. 2190 (2021); and <u>Spokeo Inc. V. Robins</u>, 578 U.S. 330 (2016).

*Minute Entry*, Docket No. 13.

15. On June 16, 2022, the Debtor-Plaintiff filed a *Statement of Uncontested Facts Pursuant to District Court Local Rule 56(b) in Support to Motion for Partial Summary Judgment* ("*Debtor-Plaintiff's Statement of Uncontested Facts*", Docket No. 15), and a *Motion for partial Summary Judgment Pursuant to Bankruptcy Rule 7056 and Federal Rule of Civil Procedure 56 and Memorandum of Law in Support Thereof* ("*Debtor-Plaintiff's MSJ*", Docket No. 16), seeking an order "finding that [the Treasury] violated the Bankruptcy Discharge Order", and "grant a summary judgment imposing liability, sanctions and, or attorney's fees for the violation of the Bankruptcy Discharge Order". Docket No. 16, p. 2, ¶ 2, p. 12, ¶ i-ii.

16. On July 18, 2022, the Treasury filed a *Statement of Uncontested Facts in Support to Motion for Summary Judgment* ("*Treasury's Statement of Uncontested Facts*", Docket No. 23), and a *Motion Requesting Entry of Summary Judgment* ("*Treasury's MSJ*", Docket No. 24), seeking the dismissal, with prejudice, of the *Complaint*, averring that an injury in law is not an injury in fact, that the Debtor-Plaintiff did not demonstrate having suffered a concrete harm and thus lacks Article III standing, and no willful or intentional violation efforts occurred. The Treasury further avers that the Collection Notice is "an informative letter", containing "an informative notification that a debt reflected," and the steps needed "to update his account in the system", which the Debtor-Plaintiff did not do. Docket No. 24, pp. 11-12.

17. On August 1, 2022, the Treasury filed an *Opposition to Plaintiff's Statement of Uncontested Facts in Support of Motion for Partial Summary Judgment (Docket Entry No. 15)* ("*Treasury's*

*Opposition to Debtor-Plaintiff's Statement of Uncontested Facts*", Docket No. 26), and a *Response in Opposition to Plaintiff's Motion Requesting Entry for Summary Judgment* ("*Treasury's Opposition to Debtor-Plaintiff's MSJ*", Docket No. 27). In its opposition, the Treasury avers that its Unified Internal Revenue System (the "SURI" for its acronym in the Spanish language, or the "SURI Portal") "didn't recognize the Plaintiff's account as bankruptcy case", and thus no "willful[] or intentional collection efforts were made". Docket No. 27, p. 8. The Treasury further avers that the Collection Notice is "an informative letter", containing "an informative notification that a debt reflected," and the steps needed "to update his account in the system", which the Debtor-Plaintiff did not do. Id., p. 8.

18. On September 12, 2022, the Debtor-Plaintiff filed an *Opposition to Defendant's Motion Requesting Entry of Summary Judgment and Response to Statement of Uncontested Facts* ("*Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts* ", Docket No. 33), averring that they have Article III standing, no evidence has been presented to support that the Collection Notice was issued as a result of a 'technical error', a 'technical error' or the 'computer did it' defense is not enough to absolve the Treasury from liability, and a bankruptcy disclaimer is ineffective to insulate the Treasury from liability.

19. On December 9, 2022, the Court issued an *Order* (Docket No. 34) noting that "neither party has submitted to the Court the alleged Collection Notice sent by the Treasury" which "prompted this violation of the discharge injunction action" "translated in the English Language". Id., p. 2. The parties were granted twenty-one (21) days to file "all the exhibits and documentary evidence translated in the English language that the parties want this Court to consider to support findings pertinent to the motions for summary judgment in conformity with 48 U.S.C. §864, Local Civ. R. 5 and P.R. LBR 9070-1(c)." Id., p. 3.

20. On January 25, 2023, the Court issued an *Order to Show Cause* (Docket No. 36), within twenty-one (21) days, that is, by February 15, 2023, as to why this adversary proceeding should not be dismissed for failure to comply with the *Order* (Docket No. 34).

21. On February 15, 2023, the Treasury field a *Motion in Compliance with Order and for Submitting Exhibits Translated to the English Language* (Docket No. 38), submitting certified English translations of the documents filed at Docket Nos. 23 and 24.

22. On February 27, 2023, the Court issued an *Order* (Docket No. 39) granting the *Motion in Compliance with Order and for Submitting Exhibits Translated to the English Language* and noting that "debtor/plaintiff has not complied with this court's order to show cause why the adversary proceeding should not be dismissed (dkt. #36)."

## LEGAL ISSUES

The issue pending before the Court is whether the issuance of the Collection Notice violated the discharge injunction pursuant to 11 U.S.C. §§ 524(a)(2), 727.

## POSITION OF THE PARTIES

I. Debtor-Plaintiff's Position

The Debtor-Plaintiff avers that the Collection Notice constitutes a collection activity in violation the discharge injunction.

II. Treasury's Position

The Treasury avers that the Collection Notice is "informative", contains informative bankruptcy declaimers, the SURI Portal "didn't recognize the Plaintiff's account as bankruptcy case", and no "willful[] or intentional collection efforts were made" in violation of the discharge order (Docket No. 24, pp. 11-12; Docket No. 27, p. 8). The Treasury furthers avers that the Debtor-Plaintiff lacks Article III standing to pursue its claim.

## UNCONTESTED MATERIAL FACTS

After reviewing the *Debtor-Plaintiff's Statement of Uncontested Facts* (Docket No. 15), the *Treasury's Statement of Uncontested Facts* (Docket No. 23), the *Treasury's Opposition to Debtor-Plaintiff's Statement of Uncontested Facts* (Docket No. 26), and the *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts* (Docket No. 33), the Court finds that the following material facts are uncontested:

1. On September 9, 2015, the Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code. See Bankr. Case No. 15-06907, Docket No. 1.

2. The Treasury was disclosed in Debtors' Schedule F as holding a pre-petition unsecured nonpriority tax debt. See *Schedule F*, Bankr. Case No. 15-06907, Docket No. 1, p. 24.

3. The Treasury was included in the master address list. See *Creditor Matrix*, Bankr. Case No. 15-06907, Docket No. 1, p. 48.

4. The Treasury received notice of the Debtors' bankruptcy filing. See *Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines*, Bankr. Case No. 15-06907, Docket No. 6; *Certificate of Notice*, Bankr. Case No. 15-06907, Docket No. 7; *Debtor-Plaintiff's Statement of Uncontested Facts*, Docket No. 15, ¶ 3; *Treasury's Opposition to Debtor-Plaintiff's Statement of Uncontested Facts*, Docket No. 26, ¶ 3; *Treasury's Statement of Uncontested Facts*, Docket No. 23, ¶ 3; *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts*, Docket No. 33, p. 5, ¶ 1.

5. The notice mailed by the Court to the Treasury includes the following language:

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. […]

Common examples of prohibited actions include contacting the debtor by telephone, mail or otherwise to demand repayment; taking actions to collect money or obtain property from the debtor; repossessing the debtor's property; starting or continuing lawsuits or foreclosures; and garnishing or deducting from the debtor's wages. […]

*Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines*, Bankr. Case No. 15-06907, Docket No. 6.

6. On December 21, 2015, the Court issued an *Order of Discharge*. See Bankr. Case No. 15-06907, Docket No. 21.

7. The *Order of Discharge* includes the following language:

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt

personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

Bankr. Case No. 15-06907, Docket No. 21.

8. The Treasury received notice of the *Order of Discharge*. See *Certificate of Notice*, Bankr. Case No. 15-06907, Docket No. 22; *Debtor-Plaintiff's Statement of Uncontested Facts*, Docket No. 15, ¶¶ 6-7; *Treasury's Opposition to Debtor-Plaintiff's Statement of Uncontested Facts*, Docket No. 26, ¶ 6-7; *Treasury's Statement of Uncontested Facts*, Docket No. 23, ¶ 6; *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts,* Docket No. 33, p. 5, ¶ 1.

9. The Treasury installed an electronic portal, the SURI Portal, which was installed in three phases: the first on October 2016; the second on December 2018; and the third on February 24, 2020. See *Treasury's Statement of Uncontested Facts*, Docket No. 23, ¶¶ 7-8; *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts,* Docket No. 33, p. 5, ¶ 1.

10. A Collection Notice addressed to the Debtor-Plaintiff and dated July 2, 2021, was issued bearing the Treasury's letterhead. See Docket No. 38-2.

11. The Collection Notice reads as follows:

Dear Taxpayer:

According to our records, you owe the treasury **$20,861.98** (see reverse for details), including principal, fines, penalties, interest, and/or surcharges calculated until July 01, 2021.

To prevent Interests and surcharges from accumulating any further, you must pay the debt immediately by accessing SURI through https://suri.hacienda.pr.gov. We remind you that if we do not receive the corresponding payment, we will proceed to charge the debt using the mechanisms established in Chapter 6, Subtitle F of the Puerto Rico Internal Revenue Code of 2011, as amended, which include, but are not limited to: 1) requiring your financial institution to withhold the payment of the debt of your bank accounts; 2) seizing and auctioning your real and personal property in an expedited manner; 3) Ordering payments to be withheld in case you are an asset and service provider for the Government of Puerto Rico: 4) Notifying the Credit Bureau.

[hw: *] **If you have evidence that you have made the payment or you understand that the debt is incorrect,** you must present the evidence at any of our Taxpayer Service Centers throughout the Island.

This notice does not exempt you from paying any other debt corresponding to previous years or periods, other concepts, or any debts in process of appraisal and/or investigation.

[hw: *] <u>If you have filed for Bankruptcy under the Law</u> and you have received this notification, it is very likely that our system does not reflect that status. Therefore, we appreciate you submitting the evidence of the bankruptcy to the Department to update our records.

If you wish to make a payment agreement you can visit or contact the Collection District of your choosing or the following District based on your mailing address.

[…]

**Account Type: Income Tax**

| Period | Principal | Interests | Surcharges | Penalties | Others | Balance Due |
|---|---|---|---|---|---|---|
| Dec – 2010 | $9,105.00 | $8,570.23 | $910.50 | $2,276.25 | $0.00 | $20,861.98 |
| **Totals** | $9,105.00 | $8,570.23 | $910.50 | $2,276.25 | $0.00 | $20,861.98 |

|  |  |
|---|---|
| **Grand Total:** | **$20,861.98** |
| Balances as of: | July 01 2021 |

Docket No. 38-2 (boldface and underline original).

12.    The Treasury did not record any lien on Debtor-Plaintiff's real property or garnish any bank accounts. <u>See</u> *Treasury's Statement of Uncontested Facts*, Docket No. 23, ¶¶ 17 *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts,* Docket No. 33, p. 8, ¶ 9.

APPLICABLE LAW AND ANALYSIS

(A)    <u>Standing under Article III of the U.S. Constitution</u>

The U.S. Constitution confers limited authority on each branch of the Federal Government. It vests Congress with enumerated "legislative Powers," Art. I, § 1, confers upon the President "[t]he executive Power," Art. II, § 1, cl. 1, and endows the federal courts with "[t]he judicial Power of the United States," Art. III, § 1. Although the U.S. Constitution does not fully explain what is meant by "[t]he judicial Power of the United States," Art. III, § 1, it does specify that this power extends only to "[c]ases" and "[c]ontroversies", Art. III, § 2.

In the context of constitutional standing under Article III of the U.S. Constitution, the U.S. Supreme Court in <u>Spokeo</u>, *supra*, stated the following:

Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. The doctrine developed in our case law to ensure that federal courts do not exceed their

authority as it has been traditionally understood. The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong. In this way, "[t]he law of Article III standing ... serves to prevent the judicial process from being used to usurp the powers of the political branches," and confines the federal courts to a properly judicial role.

Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. Where, as here, a case is at the pleading stage, the plaintiff must "clearly ... allege facts demonstrating" each element.

…

To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

…

For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way."

Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be "concrete."

…

A "concrete" injury must be "*de facto* "; that is, it must actually exist. When we have used the adjective "concrete," we have meant to convey the usual meaning of the term—"real," and not "abstract." Concreteness, therefore, is quite different from particularization.

…

"Concrete" is not, however, necessarily synonymous with "tangible." Although tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete.

Spokeo, 578 U.S. at 338-340 (citations omitted). See also TransUnion LLC v. Ramírez, —— U.S. ——, 141 S. Ct. 220 (2021).

To establish constitutional standing, a plaintiff must satisfy three elements: "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." Franklin California Tax-Free Tr. v. Puerto Rico, 85 F. Supp. 3d 577, 593 (D.P.R. 2015), judgment entered, (D.P.R. Feb. 10, 2015), and aff'd, 805 F.3d 322 (1st Cir. 2015), aff'd, 579 U.S. 115 (2016), quoting Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009).

With respect to the Treasury's argument that the Debtor-Plaintiff lacks standing under Article III of the U.S. Constitution to pursue the instant adversary proceeding because "the Plaintiff did not

demonstrate that [they] suffer a concrete harm[]" (Docket No. 24, p. 11), the court finds that the Debtor-Plaintiff has met all three elements. First, the Debtor-Plaintiff has suffered an injury in fact that is concrete and particularized to him. Specifically, the court finds that the Debtor-Plaintiff pleads various damages resulting from the Treasury's alleged violation of  Section 524(a)(2) of the Bankruptcy Code, 11 U.S.C. § 524(a)(2), in the *Complaint* (Docket No. 1) and the *Unsworn Statement  Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746* attached as Exhibit A to *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts* (Docket No. 33-1), such as emotional damages in the form of  "emotional distress, mental anguish, and anxiety" (Docket No. 1, p. 10, ¶ 40), "fear, confusion and anguish" (Docket No. 33-1, p. 2, ¶ 8), and actual damages in the form of "unnecessary time, effort, expense … in seeking to enforce their rights" (Docket No. 1, p. 11, ¶ 45), and the procurement of counsel who "has incurred and will incur costs and other related expenses in prosecuting this action" (Docket No. 1, p. 11, ¶ 46). See Bernier v. Treasury Dep't (In re Bernier), 2022 WL 17096264, at *11, 2022 Bankr. LEXIS 3283, at *32 (Bankr. D.P.R. 2022) (noting, for purposes of Article III standing, that "Plaintiffs' allegations do not consist of a bare statutory violation, given that the Plaintiffs allege in the Complaint various damages resulting from the alleged discharge violations such as physical and emotional damages in the form of emotional distress, mental anguish, and extreme anxiety."). Second, the Debtor-Plaintiff adequately pleads that the injury suffered is a result of the Treasury's violation of Section 524(a)(2) of the Bankruptcy Code, 11 U.S.C. § 524(a)(2). And Third, the Debtor-Plaintiff alleges sufficient facts to establish that the injury may be redressed by a favorable decision. Consequently, the court concludes that the Debtor-Plaintiff has suffered an injury-in-fact sufficient to confer Article III standing.

(B)      Standard of Motion for Summary Judgment

Under Fed. R. Civ. P. 56, made applicable to adversary proceedings under Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  See also Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322-332 (1986); In re Colarusso, 382 F.3d 51 (1st Cir. 2004); Alicea v. Wilkie, 2020 WL 1547064, 2020 U.S. Dist. LEXIS 57213 (D.P.R. 2020).

"The summary-judgment procedure authorized by Rule 56 is a method for promptly disposing of actions in which there is no genuine dispute as to any material fact or in which only a question of law is involved." Charles A. Wright, Arthur R. Miller, & Mary K. Kane, 10A Federal Practice and Procedure § 2712 (4th ed., West 2022). "Rule 56 provides the means by which a party may pierce the allegations in the pleadings and obtain relief by introducing outside evidence showing that there are no fact issues that need to be tried." Id. (footnotes omitted). "[S]ummary judgment is not a substitute for the trial of disputed fact issues. Accordingly, the court … is empowered [only] to determine whether there are issues to be tried." Id. (footnotes omitted). See also In re Bernier, 2022 WL 17096264, at *5, 2022 Bankr. LEXIS 3283, at *17-18 ("the court may only determine whether there are issues to be tried, and it is improper if the existence of a material fact is uncertain.").

A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party. See Thompson v. Coca-Cola Co., 522 F.3d 168, 175 (1st Cir. 2008). See also Andino-Oquendo v. Federal National Mortgage Association, 2023 WL 2245072, at *1, 2023 U.S. Dist. LEXIS 34375, at *2 (D.P.R. 2023), quoting Alicea, 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. A fact is material only if it is determinative of the outcome of the litigation. See Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975), *cert. denied*, 425 U.S. 904 (1976); Maymí v. P.R. Ports Auth., 515 F. 3d 20, 25 (1st Cir. 2008); In re Financial Oversight and Management Board for Puerto Rico, --- F.Supp.3d ----, 2023 WL 2357440, at *12, 2023 U.S. Dist. LEXIS 37200, at *33 (D.P.R. 2023), quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) ("Material facts are those that 'possess[ ] the capacity to sway the outcome of the litigation under the applicable law,' and there is a genuine factual dispute where an issue 'may reasonably be resolved in favor of either party.' ").

When considering a petition for summary judgment, the court must review the evidence in the light most favorable to the nonmoving party. See Thompson, 522 F.3d at 172, citing Franceschi v. United States VA, 514 F.3d 81, 83 (1st Cir. 2008). The moving party invariably bears both the initial as well as the ultimate burden in demonstrating its legal entitlement to summary judgment. See Adickes v. Kress & Co., 398 U.S. 144, 157 (1970); López v. Corporación Azucarera de Puerto Rico, 938 F.2d 1510, 1516 (1st Cir.

1991); Alicea , 2020 WL 1547064, at *2, 2020 U.S. Dist. LEXIS 57213, at *4. It is essential that the moving party explain its reasons for concluding that the record does not contain any genuine issue of material fact in addition to making a showing of support for those claims for which it bears the burden of trial. See Bias v. Advantage International, Inc., 905 F.2d 1558, 1560–61 (D.C. Cir. 1990), *cert. denied*, 498 U.S. 958 (1990).

To that end, L. Civ. R. 56(b) requires a movant to include a separate, short, and concise statement of material facts and to support each factual assertion with a citation to the evidentiary record. See L. Civ. R. 56(b), (e). "The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment,", and "shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts." L. Civ. R. 56(e).

The moving party cannot prevail if any essential element of its claim or defense requires trial. López, 938 F.2d at 1516. In addition, the moving party is required to demonstrate that there is an absence of evidence supporting the nonmoving party's case. See Celotex, 477 U.S. at 325; Prokey v. Watkins, 942 F.2d 67, 72 (1st Cir. 1991); Daury, 842 F.2d at 11. In its opposition, the nonmoving party must show genuine issues of material facts precluding summary judgment; the existence of some factual dispute does not defeat summary judgment. See Kennedy v. Josephthal & Co., Inc., 814 F.2d 798, 804 (1st Cir. 1987); Kauffman v. Puerto Rico Telephone Co., 841 F.2d 1169, 1172 (1st Cir. 1988); Hahn, 523 F.2d at 464. A party may not rely upon bare allegations to create a factual dispute but is required to point to specific facts contained in affidavits, depositions, and other supporting documents which, if established at trial, could lead to a finding for the nonmoving party. See Over the Road Drivers, Inc. v. Transport Insurance Co., 637 F.2d 816, 818 (1st Cir. 1980). The moving party has the burden to establish that it is entitled to summary judgment; no defense is required where an insufficient showing is made. See López, 938 F.2d at 1517. The nonmoving party need only oppose a summary judgment motion once the moving party has met its burden. See Adickes, 398 U.S. at 159.

When both parties seek summary judgment, as is the case here, the court:

-13-

must evaluate each motion independently, drawing all inferences against each movant in turn. AJC Int'l, Inc. v. Triple–S Propiedad, 790 F.3d 1, 3 (1st Cir. 2015). "Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v. Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted). Although each motion for summary judgment must be decided on its own merits, each motion need not be considered in a vacuum. Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins. Co. v. Rivera–Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted). "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the district court ordinarily should consider the two motions at the same time, applying the same standards to each motion." Wells Real Estate, 615 F.3d at 51 (quoting P.R. American Ins., 603 F.3d at 133) (internal quotation marks omitted).

Laboy-Salicrup v. Puerto Rico Electric Power Authority, 244 F.Supp. 3d 266, 270 (D.P.R. 2017). See also In re Furlong, 620 B.R. 422, 425 (Bankr. D.N.H. 2020), *aff'd sub nom*, 2021 WL 4452320, 2021 U.S. Dist. LEXIS 186633 (D.N.H. 2021).

(C)      English Language Requirement in the Federal Courts in Puerto Rico

"It is well settled that the law incontrovertibly demands that federal litigation in Puerto Rico be conducted in English", in accordance with 48 U.S.C. § 864. Banco Popular de P.R. v. Santiago-Salicrup, 630 B.R. 374, 378 (D.P.R. 2021), citing Estades-Negroni v. Assocs. Corp. of N. Am., 359 F. 3d 1, 2-3 (1st Cir. 2004). See also 48 U.S.C. § 864 ("All pleadings and proceedings in the United States District Court for the District of Puerto Rico shall be conducted in the English language."); L. Civ. R. 5(c) ("All documents not in the English language which are presented or filed, whether as evidence or otherwise, must be accompanied by a certified translation into English…"); P.R. LBR 9070-1(c) ("All Exhibits and documentary evidence in Spanish or other language shall be fully translated to the English language by a certified translator."); In re Bernier, 2022 WL 17096264, at *6-7, 2022 Bankr. LEXIS 3283, at *17-18 (holding that documents not in the English language should not be considered).

The Debtor-Plaintiff has not filed a certified translation in the English language of the Collection Notice at issue, and thus failed to comply with 48 U.S.C. § 864, L. Civ. R. 5(c), and P.R. LBR 9070-1(c). Nevertheless, the court takes judicial notice of the certified translation submitted by the Treasury pursuant to Fed. R. Evid. 201. See Docket No. 38-2.

(D)     Violation of the Discharge Injunction under 11 U.S.C. § 524(a)(2)

This court addressed the applicable law on violations of the discharge injunction under 11 U.S.C. § 524(a)(2) of the Bankruptcy Code in In re Laboy, 2010 WL 427780, 2010 Bankr. LEXIS 345 (Bankr. D.P.R. 2010), and In re McConnie Navarro, 563 B.R. 127 (Bankr. D.P.R. 2017). In Laboy, *supra*, this court stated the following:

> The effect of a bankruptcy discharge is that it "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). The discharge injunction is the mechanism which allows the debtor to commence debt-free his or her fresh start. See In re Latanowich, 207 B.R. 326, 334 (Bankr. D. Mass. 1997) ("The purpose of the permanent injunction set forth at § 524(a)(2) and reiterated in the discharge order is to effectuate one of the primary purposes of the Bankruptcy Code: to afford the debtor a financial fresh start."); Green v. Welsh, 956 F.2d 30, 33 (2d Cir. 19[]92); Baker v. Somerville Mun. Fed. Credit Union (In re Baker), 2006 Bankr. Lexis 3183, 2006 WL 3370864 (Bankr. D. Mass. 2006). The discharge injunction is like a permanent extension of the automatic stay under 11 U.S.C. § 362(a) of the Bankruptcy Code and thus, includes all types of collection activity such as; letters, phone calls, threats of criminal proceedings or other adverse actions brought about with the purpose of debt repayment. See Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[2] (15th ed. 2009); Ung v. Boni (In re Boni), 240 B.R. 381, 384 n. 5 (B.A.P. 9th Cir. 1999). Moreover, "[c]reditors are obligated to maintain procedures to ensure that they do not violate section 524, and may be held liable for damages and attorney's fees if they do not." Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 524.02[b] (15th ed. 2009); See In re Roush, 88 B.R. 163, 165 (Bankr. S.D.Ohio 1988); Faust v. Texaco (In re Faust), 270 B.R. 310, 317 (Bankr. M.D.Ga. 1998); In re Nassoko, 405 B.R. 515, 521 (Bankr. S.D.N.Y. 2009). "Although, § 524(a) which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy courts invoke § 105(a), which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of civil contempt action." Parker v. Boston Univ. (In re Parker), 334 B.R. 529, 537–538 (Bankr. D.Mass. 2005); See U.S. v. Rivera Torres (In re Rivera Torres), 309 B.R. 643,647 (B.A.P. 1st Cir. 2004); In re Pratt, 324 B.R. at 5; Bessette v. Avco Fin. Servs., Inc., 230 F.3d 439, 445 (1st Cir. 2000), *cert. denied*, 532 U.S. 1048, 121 S.Ct. 2016, 149 L.Ed.2d 1018 (2001).

2010 WL 427780, at *5, 2010 Bankr. LEXIS 345, at *15-16.

With respect to the standard to establish a willful violation of the discharge injunction under 11 U.S.C. § 524(a)(2), this court held that the standard "is met if the defendant had knowledge of the discharge injunction and the same intended the actions which constituted the violation." 2010 WL 427780, at *5, 2010 Bankr. LEXIS 345, at *15-16, citing Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 268 (1st Cir. 1999), Pratt v. GMAC (In re Pratt), 462 F.3d 14, 21 (1st Cir. 2006), and Alan N. Resnick & Henry J.

Sommer, 4 Collier on Bankruptcy ¶ 524.02[2][c] (15th ed., 2009). This court further held that the defendant "must have actual or constructive knowledge of the discharged debt for the knowledge requirement to be satisfied", and "[c]ivil contempt must be proven by clear and convincing evidence." Id., citing Torres v. Chase Bank U.S.A., N.A. (In re Torres), 367 B.R. 478, 490 (Bankr. S.D.N.Y. 2007), and Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D.Mass. 2005).

On that vein, this court stated the following in McConnie, *supra*:

A creditor violates the discharge injunction when it (i) has notice of the debtor's discharge; (ii) intends the actions which constitute the violation; and (iii) acts in a way that improperly coerces or harasses the debtor. In re Lumb, 401 B.R. at 6. In determining discharge injunction violations, the crucial issue is whether the creditor acted in such a way to "coerce" or "harass" the debtor improperly. See Pratt v. GMAC (In re Pratt), 462 F.3d 14, 19 (1st Cir. 2006) (citing In re Diamond, 346 F.3d 224, 227 (1st Cir. 2003)). "Coercion is assessed under an objective standard, and the issue of whether a creditor acted in an objectively coercive manner is determined on the specific facts of each case." Bates v. CitiMortgage, Inc. (In re Bates), 517 B.R. 395, 398 (Bankr. D.N.H. 2014) (citing In re Pratt, 462 F.3d at 19)); See also: Quiles Aviles v. City of Philadephia Water Revenue Bureau, 532 B.R. 428, 436 (Bankr. D.P.R. 2015). "Thus, a debtor need not prove that a creditor acted in bad faith or even that the creditor created all of the circumstances in which the coercion occurred, only that the creditor's actions had a coercive effect upon the debtor (citing In re Schlichtmann, 375 B.R. 41, 95 (Bankr. D. Mass. 2007); Curtis v. Salem Five Mortgage Co., LLC (In re Curtis), 359 B.R. 356 (1st Cir. BAP 2007). However, the "debtor's subjective feeling of coercion of harassment is not enough." Bates v. CitiMortgage, Inc., 2016 U.S. App. Lexis 22215, *7, 2016 WL 7229754 (1st Cir. 2016).

The determination is fact specific and made on a case-by-case basis, as the line between forceful negotiation and improper coercion is not always clear. In re Pratt, 462 F.3d at 19; In re Schlichtmann, 375 B.R. at 95[;] In re Lumb, 401 B.R. at 6–7. An action is considered coercive when it is "tantamount to a threat." See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392, 402 (1st Cir. 2002), or places the debtor "between a rock and a hard place." See Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227–228 (1st Cir. 2003). In determining whether an action is coercive, courts consider the "immediateness" of the threatened action and the context in which this action took place. In re Diamond, 346 F.3d at 227; See also: In re Bates v. Citimortgage, Inc., 2016 U.S. App. Lexis 22215, *8, 2016 WL 7229754 ("We have no 'specific test' to determine whether a creditor's conduct meets this objective standard, but we consider the facts and circumstances of each case, including factors such as the 'immediateness of any threatened action and the context in which a statement is made' "). ".... A creditor violates the discharge injunction only if it acts to collect or enforce a prepetition debt; bad acts that do not have a coercive effect on the debtor do not violate the discharge." In re Lumb, 401 B.R. at 7 citing In re Schlichtmann, 375 B.R. at 97.

563 B.R. at 142-143.

In applying the three-prong test to the instant adversary proceeding, both parties agree that Treasury had actual notice of the *Order of Discharge*, thus the first prong is satisfied. The parties disagree however as to the second and third prongs of the test, to wit, whether the treasury intended the actions that violated the discharge injunction, and whether the Collection Notice improperly coerced or harassed the debtor. The Debtor-Plaintiff contends that the Collection Notice is an explicit collection effort by the Treasury to coerce the Debtor-Plaintiff into making payments on the discharged debt, threatening legal consequences upon failure to make such payments. The Treasury disagrees.

The question of whether the Collection Notice violated the discharge injunction is a "particularly fact-intensive inquiry" for which  "no bright line rule exists. Case law, however, is instructive in determining whether a creditor's communications violate the discharge injunction. Because the discharge injunction only prohibits those communications 'designed to collect, recover or offset any [discharged] debt as a personal liability of the debtor,' correspondence that is 'informational in nature' does not violate the automatic stay or discharge injunction." Kirby v. 21st Mortg. Corp. (In re Kirby), 599 B.R. 427, 440 (B.A.P. 1st Cir. 2019) (citations omitted). "In this circuit, courts assess whether conduct is improperly coercive or harassing under an objective standard—the debtor's subjective feeling of coercion or harassment is not enough." Id., at 440  (quotations and citations omitted). "While there is no specific test to determine whether a creditor's conduct meets this objective standard, the circuit considers the facts and circumstances of each case, including factors such as the immediateness of any threatened action and the context in which a statement is made." Id. "An action is coercive when it is tantamount to a threat, or places the debtor between a rock and a hard place in which he would lose either way." Id., citing Diamond v. Premier Capital, Inc. (In re Diamond), 346 F.3d 224, 227 (1st Cir. 2003).

The court notes that the Collection Notice contains the following language: "you owe the treasury $20,861.98", "[t]o prevent Interests and surcharges from accumulating any further, you must pay the debt immediately", "if we do not receive the corresponding payment, we will proceed to charge the debt" by "1) requiring your financial institution to withhold the payment of the debt of your bank accounts; 2) seizing and auctioning your real and personal property in an expedited manner; 3) Ordering payments to be

withheld in case you are an asset and service provider for the Government of Puerto Rico: 4) Notifying the Credit Bureau." Docket No. 38-2. The Collection Notice also contains the following 'disclaimer', which is written in the same style and size font as the entirety of the Collection Notice:

> [hw: *] If you have filed for Bankruptcy under the Law and you have received this notification, it is very likely that our system does not reflect that status. Therefore, we appreciate you submitting the evidence of the bankruptcy to the Department to update our records.

Docket No. 38-2.

As an introductory matter, the court is not swayed by the Treasury's attempt to shift blame to the SURI Portal to avoid a determination of willfulness. Various courts have considered the 'technical computer error' defense raised by the Treasury as 'the computer did it defense', which has been characterized as a non-starter "since intelligent beings still control the computer and could have altered the programming appropriately." McCormack v. Federal Home Loan Mortg. Corp. (In re McCormack), 203 B.R. 521, 524 (Bankr. D.N.H. 1996). See also In re Rijos 263 B.R. 382, 392 (B.A.P. 1st Cir. 2001) (creditor's 'computer did it' defense to a willful violation of stay action was not viable); In re Cordero, 2012 WL 5457218, at *6, 2012 Bankr. LEXIS 5009, *21 (Bankr. D.P.R. 2012) (creditor's 'computer did it' defense was "simply unpersuasive and a nonstarter because [the creditor] admits that its new computer system was deficient…"); In re Quiles Vazquez, 2017 WL 2274466, 2017 Bankr. LEXIS 1405 (Bankr. D.P.R. 2017) (assertion that account statements were sent due to a computer malfunction was not a valid defense); In re Baker, 2006 WL 3370864, at *2, 2006 Bankr. LEXIS 3183, at *7 (Bankr. D.Mass. 2006) (opined that once a creditor receives notice of a debtor's bankruptcy filing, it has the burden of "ensur[ing] that whatever system it has in place is effective to prevent [stay] violations"). The Treasury's SURI Portal system failed to prevent the issuance of the Collection Notice, and the Treasury has the ultimate burden of programing and ensuring that whatever system is in place works effectively.

The court notes that this is not the first time the Treasury has blamed its SURI Portal for its own shortcomings. In Bernier, *supra*, the Treasury issued, via the SURI Portal, a Notification and Payment Requirement which demanded payment of a pre-petition discharged debt and threatened legal consequences

for failure to make such payments. The notice was watermarked with the word "DRAFT" in the Spanish Language written consciously on the center of each of its three pages. The debtor averred that the notice violated the discharge injunction; the Treasury contended that the notice "was not issued because it was a draft", and that the debtors lacked Article III standing. In re Bernier, 2022 WL 17096264, at *3, 2022 Bankr. LEXIS 3283, at *10. The court noted that the Treasury did not issue the notice without the watermark, that record was devoid of evidence showing that the Treasury proceeded to collect on the discharged debt through the mechanisms available to it, including the recording of a lien on debtors' real property or bank accounts or through wage garnishment. After considering the facts and circumstances present in that particular adversary proceeding, including the "immediateness of any threatened action and the context in which a statement is made," the court held that the debtors did not evince that the Treasury improperly attempted to "coerce" them to pay a discharged debt, that the Treasury threatened "immediate action", or that its conduct was "tantamount to a threat", and thus concluded that they did not establish by clear and convincing evidence that the Treasury violated the discharge injunction. 2022 WL 17096264, at *10, 2022 Bankr. LEXIS 3283, at *29-30. In the context of constitutional standing, the court found that the Treasury did not discuss whether the alleged discharge injunction violation failed to allege an injury, and that both parties failed to discuss whether a discharge injunction violation was sufficient to constitute an injury in fact. Nevertheless, it found that the debtors' allegations did not consist of a bare statutory violation for they alleged various damages resulting from the alleged violation, such as physical and emotional damages in the form of emotional distress, mental anguish, and extreme anxiety. 2022 WL 17096264, at *11, 2022 Bankr. LEXIS 3283, at *32. Bernier is distinguishable in several key ways: the context in which the communications were (or were not) issued are dissimilar in as much as the Collection Notice at issue here was in fact issued, and was not a draft; and, the defenses raised by the Treasury in connection with of its SURI Portal did not include allegations of 'the computer did it' or 'bankruptcy disclaimer'.

With respect to the Treasury's attempt to shield behind its 'bankruptcy disclaimer' or 'informative letter' defense to avoid liability, the court is not swayed. The court notes that the record is devoid of any evidence that the Treasury proceeded to collect on the discharged debt through the mechanisms outlined in

-19-

the Collection Notice, and the parties agree that the Treasury did not record any lien on Debtor-Plaintiff's real property or garnish any bank accounts. See *Treasury's Statement of Uncontested Facts*, Docket No. 23, ¶¶ 17; *Debtor-Plaintiff's Opposition to Treasury's MSJ and Statement of Uncontested Facts,* Docket No. 33, p. 8, ¶ 9). It also notes that the Collection Notice does not contain any language advising the recipient that such communication is informational in nature and not an attempt to collect on a discharged debt; indicates the amount allegedly past due; demands immediate payment and threatens legal consequences for non-action; and that the purported disclaimer is not unambiguous and conspicuously placed, in bold typeface or otherwise, and does not acknowledge the bankruptcy case or the discharge order. See *e.g.*, In re Cantrell, 605 B.R. 841, 856 (Bankr. W.D. Mich. 2019) (noting that "the presence, prominence, and clarity of disclaimer language in post-discharge communications with debtors is often a significant factor in a court's determination of whether the communications violate the discharge injunction"). Further, and perhaps more importantly, the purported disclaimer is, at most, a pro forma acknowledgement that the SURI Portal's programing is deficient in its detection of bankruptcy proceedings.

In considering the facts and circumstances of the instant adversary proceeding, the court concludes that the Collection Notice constitutes a demand for payment of a pre-petition discharged debt, and that the 'immediateness' of the threatened action is 'tantamount to a threat' and 'coercive', and thus a violation of the discharge order. The purported disclaimer alters nothing nor absolves the Treasury of liability. See *e.g.*, In re Kirby, 599 B.R. at 441 ("When evidence of coercion or harassment is present, courts typically find that a bankruptcy disclaimer is ineffective to insulate the creditor from liability."); In re Zine, 521 B.R. 31, 40 (Bankr. D. Mass. 2014) ("A creditor cannot avoid the consequences of violating the automatic stay or discharge injunction simply by burying an alternative explanation for a clear demand for payment in fine print."); Todt v. Ocwen Loan Servicing, LLC (In re Todt), 567 B.R. 667, 679 (Bankr. D.N.H. 2017) (stating that "a pro forma bankruptcy disclaimer is not a 'get out of jail free' card that can absolve a creditor of liability for a pattern of conduct that is inconsistent with the terms of the disclaimer itself"); Whitaker v. Bank of Am. (In re Whitaker), 2013 WL 2467932, at *8, n. 4, 2013 Bankr. LEXIS 232, at *24, n. 4 (Bankr.

E.D. Tenn. 2013) (recognizing that disclaimer language does not insulate a communication from being an improper demand for payment).

CONCLUSION

Summary judgment is appropriate under Fed. R. Civ. P. 56(a) and Fed. R. Bankr. P. 7056 for there are no material facts in dispute as to the Treasury's having actual knowledge of the discharge order, and the issuance of the Collection Notice thereafter. The court concludes that the Treasury's Collection Notice violated the discharge order. For the reasons stated herein, summary judgment in favor of the Debtor-Plaintiff is GRANTED and, consequently, summary judgment in favor of the Treasury dismissing the instant adversary proceeding is DENIED.

The court will schedule an evidentiary hearing to ascertain damages in connection with the Treasury's violation of Section 524(a)(2) of the Bankruptcy Code, 11 U.S.C. § 524(a)(2).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of March 2023.

Enrique S. Lamoutte
United States Bankruptcy Judge

-21-